JOSEPH A., by next friend Corrine WOLFE; Josephine A., by next friend Corrine Wolfe; Michael B., by next friend Lucy Gale McMurray; Michelle C., by next friend La Donna Harris and Lucy Gale McMurray; Joel D., by next friend Lucy Gale McMurray; Susan E., by next friend Barbara Burns; Donald E., by next friend Barbara Burns, Plaintiffs–Appellants,

v.

Lawrence B. INGRAM, Margaret Larrogoite, Darold Christiansen, and Janet Bryan, in their individual capacities, Nora Buchanon, in her official capacity as County Office Manager of the Bernalillo County office of the Children Youth & Families Department, Deborah Hartz, in her official capacity as Director of the Protective Services Division of the Children, Youth & Families Department, Heather Wilson, in her official capacity as secretary of the Children, Youth & Families Department, Linda S. Garcia, in her official capacity as the County Office Manager of the Santa Fe County office of the Children, Youth & Families Department, Defendants–Appellees.

No. 00–2136.

United States Court of Appeals, Tenth Circuit.

Aug. 22, 2001.

Rose E. Firestein of Children's Rights, Inc., New York, New York, Marcia Robinson Lowry, of Children's Rights, Inc., New York, New York, and Robert Levy of Greer, Wissel & Levy, P.A., Albuquerque, NM, for Plaintiffs–Appellants.

Timothy V. Flynn O'Brien of Bryan & Flynn O'Brien, Albuquerque, New Mexico and John H. Clough, Assistant Attorney General, New Mexico Attorney General's Office, Albuquerque, New Mexico, for Defendants–Appellees.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BRIMMER,* District Judge.

EBEL, Circuit Judge.

This civil rights class action reaches this court for the second time after more than twenty years of litigation and seventeen years of federal court oversight of New Mexico's Department of Human Services and its successor, the New Mexico Children, Youth and Families Department (collectively "the Department"). Appellants brought suit in 1980 alleging that a variety of systemic problems within the Department led to failures to make timely decisions which effectively denied them meaningful access to adoption services and a chance to be raised in permanent, stable families.

Three years after the suit was filed and certified as a class action, the parties entered into a consent decree. The first decree was vacated and replaced with a second decree in September 1998. The following year, Appellants moved the district court to hold the Department in contempt for failing to comply with the second decree, and the Department countered with a motion to dismiss on the grounds that the suit is barred by New Mexico's sovereign immunity and that the district court should abstain from hearing the case pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court rejected the Depart-

---

* Honorable Clarence A. Brimmer, District Court Judge, District of Wyoming, sitting by designation.

ment's Eleventh Amendment argument, but nonetheless dismissed the case pursuant to the *Younger* abstention doctrine. Appellants appeal the dismissal of the case, and the Department cross-appeals the district court's rejection of its Eleventh Amendment argument.

We conclude that Appellants' claims under the Social Security Act are barred by the Eleventh Amendment, and Appellants' constitutional claims are barred by the *Younger* abstention doctrine. Accordingly, we AFFIRM the district court's judgment dismissing the case without prejudice.

## I. BACKGROUND

In spite of the extensive history of this case, the background to this appeal is relatively straightforward. Appellants, children who became wards of the state after experiencing abuse or neglect, filed suit against the Department seeking damages and injunctive relief to prevent the Department from causing children to spend unreasonable amounts of time in foster care. The district court certified a plaintiff class representing all those children committed to the Department's custody because of parental neglect or abuse. The Department filed an unsuccessful motion requesting that the court abstain from hearing the case, and the parties subsequently entered into a settlement in which the Department agreed to undertake systemic reforms in exchange for Appellants dropping their request for damages. The district court approved the settlement and entered a consent decree ("Original Consent Decree") to govern the ongoing relationship among the parties and class members.

The Department moved to have the action dismissed in 1994, arguing that it had substantially complied with the terms of the Original Consent Decree, and the district court granted the mo-

tion. We reversed, however, and the case was remanded to a special master who recommended the Department be held in contempt for violating the terms of the settlement. *See Joseph A. v. N.M. Dep't of Human Servs.*, 69 F.3d 1081, 1083–84 (10th Cir.1995).

In 1998, the parties negotiated a second settlement that was approved by the court to replace the Original Consent Decree. This new settlement was called the "Stipulated Exit Plan" ("SEP"), and it set forth specific benchmarks that would allow the Department to remove itself from the court's jurisdiction, step by step, as each individual benchmark was met. The SEP imposed the following obligations upon the Department:

- Provide caseworkers, supervisors, and adoption specialists with specific training at the time they are hired and periodically during their service in the Department;
- Conduct an individual assessment conference to develop an assessment plan for each child prior to appearing at an initial custody hearing that is held before the New Mexico Children's Court ("Children's Court"), *see* N.M. Stat. § 32A–4–18(A);
- Conduct a Treatment Planning Conference to develop an individualized treatment plan for each child prior to an adjudicatory hearing held before the Children's Court, *see* N.M. Stat. § 32A–4–19(B);
- In developing individualized assessment and treatment plans, desist from selecting emancipation as a discharge goal for any child under thirteen years of age "unless the children's court so orders, against the documented recommendation of the Department," and provide counseling to any children between the ages of twelve and fourteen for whom such a goal is selected;

- In developing individualized assessment and treatment plans, desist from selecting long-term foster care as a discharge goal for any child except under specified conditions;
- In developing individualized assessment and treatment plans, desist from retaining a discharge goal of "return-home" for any child that has been in foster care for more than fifteen of the most recent twenty-two months, except in certain specified circumstances including when "[t]he Children's Court has ordered the plan, against the documented recommendation of the Department";
- Review each child's individualized treatment plan no less frequently than every six months;
- File papers with the Children's Court necessary to initiate the termination of parental rights within ninety days of the date that a child's discharge plan is changed to adoption;
- If a child with a plan of adoption is in a conversion home, within sixty days of a child's being freed for adoption, obtain a placement agreement from foster parents who plan to adopt children placed in their home, and, if that is unsuccessful, refer the case to the Department's Central Adoptions Unit;
- If a child with a plan of adoption is not in a conversion home, within thirty days identify three prospective families for adoption, and, if no match is found, assign the case to an adoption recruitment specialist to conduct a child-specific search for an adoptive home;
- Complete home studies of prospective adoptive parents within 150 days of the date of application;
- Require private contractors to comply with the provisions of the Consent Decree;
- Maintain a computerized record system containing certain information specified in the Consent Decree;
- Employ only staff members with certain enumerated qualifications;
- Comply with New Mexico state law and Department regulations concerning Citizen Review Boards; and
- Provide a "Neutral Third Party" appointed by the court to monitor the Department's compliance with the Consent Decree with certain specified information to facilitate oversight.

The following year, Appellants moved the court to hold the Department in contempt for allegedly persistent violations of portions of the SEP. The Department responded by filing another motion for dismissal arguing that the district court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and that the suit was barred by the Eleventh Amendment.

The district court rejected the Department's Eleventh Amendment argument, but nevertheless dismissed the case in its entirety on the basis of *Younger*. Appellants then unsuccessfully moved the district court to alter or amend the order pursuant to Fed.R.Civ.P. 59(e), asserting that the district court applied the wrong standard of review in reaching its decision because the Department's motion to dismiss should have been construed as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). This appeal followed.

## II. DISCUSSION

*Jurisdiction*

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction to review the district court's dismissal of the action pursuant to 28 U.S.C. § 1291.

## A. *Eleventh Amendment Immunity*

We first consider the Department's appeal of the district court's holding that this action is not barred by sovereign immunity pursuant to the Eleventh Amendment. "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying ... claim." *Martin v. Kansas*, 190 F.3d 1120, 1126 (10th Cir.1999), *overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

■ We review de novo a district court's determination of a motion to dismiss an action for lack of subject matter jurisdiction because of Eleventh Amendment sovereign immunity. *See Elephant Butte Irrigation Dist. v. Dep't of the Interior*, 160 F.3d 602, 607 (10th Cir.1998); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1186 (10th Cir.1998).

■ The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." "Though the text of the Amendment does not expressly so provide, the Supreme Court has interpreted the Amendment to apply to federal question suits against a State brought in federal court by the State's own citizens." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir.1999) (citing *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267–68, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). The Supreme Court has recognized two exceptions to the

Eleventh Amendment: (1) the state may consent to be sued; or (2) in certain circumstances Congress may clearly and expressly abrogate a state's immunity. *See Elephant Butte*, 160 F.3d at 607; *ANR Pipeline*, 150 F.3d at 1187–88. The parties do not argue that either of these exceptions applies in this case.[1]

■ *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), provides a third route by which a party may obtain relief against a state agency in federal court. The *Ex parte Young* doctrine holds that the Eleventh Amendment generally does not stand as a bar to suits in which a party seeks only prospective equitable relief against a state official. *See id.* at 159–60, 28 S.Ct. 441; *ANR Pipeline*, 150 F.3d at 1188. "The *Young* doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *Coeur d'Alene*, 521 U.S. at 288, 117 S.Ct. 2028 (O'Connor, J., concurring).

■ This case on its face plainly falls under the *Ex parte Young* doctrine, in that it seeks only prospective, injunctive relief against state officers charged with carrying out the Department's functions. The Supreme Court of the United States, however, has recognized two limitations to *Ex parte Young*, both of which the Department argues apply to this case. The first limitation was applied in *Seminole Tribe v. Florida*, 517 U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), in which the Supreme Court held that, "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a

---

**1.** Neither party explicitly argues consent as a basis for waiver of Eleventh Amendment Immunity. Furthermore, the parties expressly reserved the right in the SEP to raise any defenses (which would include an Eleventh Amendment immunity argument). Finally, neither party has argued that Congress has expressly abrogated Eleventh Amendment immunity in this context, and we agree that there is no such express abrogation.

statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." The following year, in *Coeur d'Alene*, the Court held that *Ex parte Young* is inapplicable in certain instances where the relief sought implicates special sovereignty interests of the state and is the functional equivalent of relief that is otherwise barred under the Eleventh Amendment. *See* 521 U.S. at 287–88, 117 S.Ct. 2028.

### 1. *Coeur d'Alene*

■ We need not delay long over the Department's contention that *Coeur d'Alene* bars the application of *Ex parte Young* to this action because this issue is controlled by *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir.1999). In *J.B. v. Valdez*, three mentally or developmentally disabled children in the custody of New Mexico's Children, Youth and Families Department sought structural reform to the state's system for evaluating and treating mental and developmental disorders afflicting children in state custody. *See* 186 F.3d at 1282. The district court abstained from hearing the action based on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. *See J.B. v. Valdez*, 186 F.3d at 1283. The plaintiffs appealed, and the state then added a new argument that the suit should be dismissed on the basis of Eleventh Amendment sovereign immunity, relying, *inter alia*, on the *Coeur d'Alene* exception to *Ex parte Young*. *See id.* at 1285–86.

We rejected the state's Eleventh Amendment argument, holding that "[a] state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of *Ex parte Young*." *Id.* at 1287. Further, we held that such a suit is not the functional equivalent to a suit for money damages, and that it does not "strike at a state's fundamental power, such as the power to tax." *See id.*

*J.B. v. Valdez* is squarely on point with the case at hand. Although we recognize that a state's administration of federally-funded welfare programs for children in its custody involves important state interests, those interests do not implicate the "essential attribute[s] of sovereignty" with which *Coeur d'Alene* was concerned. 521 U.S. at 283, 117 S.Ct. 2028. Therefore, we hold that *Coeur d'Alene* does not remove this action from the scope of the *Ex parte Young* doctrine.

### 2. *Seminole Tribe*

■ The application of the Court's decision in *Seminole Tribe* raises more difficult issues. The Department argues that *Seminole Tribe* requires dismissal because Congress created a detailed remedial scheme governing a state's obligation to provide child welfare services under Title IV of the Social Security Act with the passage of the Adoption and Safe Families Act of 1997, 42 U.S.C. §§ 673b, 679b & 678, and the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 et seq.

In *Seminole Tribe*, an Indian tribe filed suit against the state of Florida to compel negotiations toward the formation of a compact required by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d), for the tribe to conduct gaming operations. *See* 517 U.S. at 47, 116 S.Ct. 1114. After first holding that provisions of IGRA which allowed an aggrieved tribe to sue states in federal court to enforce the provisions of the statute represented an unconstitutional attempt to abrogate Florida's sovereign immunity, the Court turned to the question of whether *Ex parte Young* might nonetheless serve as a basis for an action against the state. *See* 517 U.S. at 74, 116 S.Ct. 1114. The Court found that, by creating an express provision allowing

tribes to sue to enforce the provisions of the IGRA, Congress implicitly expressed its intent to preclude the broader relief that would otherwise be available under *Ex parte Young. See id.* at 75–76, 116 S.Ct. 1114.

■■■ We have thus interpreted *Seminole Tribe* to create " 'an obligation for the federal courts to examine Congress' stated intent with respect to the scope of statutory remedies that may be available in any case where' an *Ex parte Young* issue is raised." *Ellis*, 163 F.3d at 1197 (quoting *ANR Pipeline*, 150 F.3d at 1189). We further held, however, that it was evident from the Supreme Court's opinion in *Seminole Tribe* that the newly recognized limitation on actions under *Ex parte Young* extended only to claims asserting a statutorily created right. *See Ellis*, 163 F.3d at 1197. We therefore concluded that the Court in *Seminole Tribe* "did not limit use of *Ex parte Young* as a means of enforcing a constitutional right." *Id.* In light of these holdings, before reaching the substance of the Department's Eleventh Amendment objections, we must determine which provisions of the SEP remedy violations of federal statutory rights (and therefore are subject to *Seminole Tribe 's* limits on the *Ex parte Young* doctrine), and which redress constitutional claims (and therefore are not).

Appellants' complaint sought relief under Titles IV and XX of the Social Security Act, 42 U.S.C. §§ 601 et seq. and 42 U.S.C. §§ 1397 et seq. Appellants also raised a variety of constitutional claims in their complaint relating to violations of due process as well as interests in privacy and family integrity that they believed to be protected under the Constitution. However, the district court dismissed the majority of their constitutional claims in 1982. The only constitutional claims remaining in this case before the Original Consent Decree was entered alleged that the Department violated Appellants' procedural due process rights by: (1) failing to establish adequate procedures for determining whether children are appropriate for adoption; and (2) failing to conduct a periodic review of class members' status while in state custody. Turning to the terms of the SEP, it appears that the only provisions in the agreement addressing Appellants' constitutional claims are requirements for conferences to develop individualized assessment and treatment plans for children entering the Department's custody, and for periodic review of those plans. We thus infer that the remaining provisions of the SEP are designed to remedy the alleged statutory violations, and therefore may be subject to *Seminole Tribe 's* limitation on the availability of the *Ex parte Young* doctrine.[2] Hence, it is appropriate for us to consider whether these provisions of the SEP violate the Eleventh Amendment.

Appellants' statutory claims are based on Titles IV and XX of the Social Security Act. Therefore, the precise question facing the court is whether either or both titles

2. The parties did not clearly enumerate which provisions of the SEP address behavior which they believe violates the Social Security Act, and which address violations of the Due Process Clause. However, we have reviewed the allegations independently, and the only ones that appear to us to have sufficient substance to implicate the Due Process Clause are those that directly implicate the Children's Court, either because the SEP places restrictions on the Department's ability to be an advocate before the Children's Court, or because it affects the information and assessment activities that guide the Children's Court's eventual adjudication of a child's status. Because we find Eleventh Amendment immunity on the constitutional claims and *Seminole Tribe* abstention on the Social Security claims, it is often not critical whether a claim is denominated a constitutional or Social Security claim.

include detailed remedial schemes for enforcement that demonstrate an intent by Congress to preclude reliance on *Ex parte Young*. Title IV creates a scheme by which the federal government makes block grants to states for the temporary assistance of needy families. *See* 42 U.S.C. § 603 et seq. Title XX creates a mechanism whereby entitlements created pursuant to Title IV and other provisions of the Social Security Act are provided to the states through consolidated block grants. *See* 42 U.S.C. § 1397 et seq. Title IV was amended in 1997 to include the Adoption and Safe Families Act. The ASFA conditioned the receipt of certain federal funds on a state's adherence to a comprehensive set of statutory and regulatory standards imposing federally-defined objectives and administrative procedures for states' child welfare services, *see* 42 U.S.C. §§ 671 et seq.; 45 C.F.R. §§ 1355.21(b) & 1355.30, the contents of individual case plans for children participating in the programs, *see* 42 U.S.C. §§ 671(a)(16) & 675(1), and appeals of award decisions, *see* 45 C.F.R. § 1355.30; 45 C.F.R. Part 16. The regulations issued to implement the ASFA require that states conduct periodic self-evaluations of their compliance with these requirements, *see id.* § 1355.32, and to submit to federal administrative oversight by the Department of Health and Human Services ("HHS"), *see generally id.* §§ 1355.32–1355.34. States whose child welfare services are found not to be in substantial conformity with the federal requirements are required to develop a pro-

gram improvement plan identifying action steps required to bring the service into conformity and benchmarks against which progress is to be measured. *See id.* § 1355.35. Should HHS disagree with the contents of a mandatory program improvement plan and be unable to reach a consensus with the state involved, HHS retains the authority to dictate the terms of the improvement plan. *See id.* § 1355.35(2). States that fail to come into substantial compliance with the ASFA's planning requirements face a graduated series of reductions in their funding eligibility under the act. *See id.* § 1355.36(b)-(e).

Turning to Title XX of the Social Security Act, we find a comparably detailed remedial scheme set forth within the accompanying regulations. *See* 45 C.F.R. §§ 96.50 et seq. The regulations require parties who wish to assert that a state has misapplied funds provided in a block grant to submit a complaint to specified officials within HHS and to comply with a detailed set of procedures for administrative hearings and appeals. *See id.* §§ 96.50(b)-(e), 96.51, 96.52. When funds provided through a block grant are inappropriately allocated by a state, the proper remedy is for the state to repay the funds to HHS, or, if repayment is not forthcoming, for HHS to reduce the following year's block grant by a commensurate amount. *See id.* § 96.51(a)-(b).[3]

We find the comprehensive statutory and regulatory[4] provisions governing Ti-

---

**3.** In addition, we note that Title XX does not provide substantive rules governing a state's provision of services for children who are candidates for adoption or foster care. Therefore, even if the remedial actions discussed above for violations of Title XX were not sufficient to foreclose reliance on *Ex parte Young* as an exception to the Eleventh Amendment, Title IV's specific application to the allegations at hand and its accompanying remedial scheme are sufficient to demonstrate

Congress's intent to do so with respect to the allegations supporting Appellants' complaint.

**4.** In the analogous context of cases determining whether an act of Congress is meant to preempt state statutes or regulations, we have held that "an agency's preemption regulations, promulgated pursuant to Congressional authority, have the same preemptive effect as statutes." *Meyer v. Conlon,* 162 F.3d 1264, 1268 (10th Cir.1998); *see also Choate v.*

tles IV and XX demonstrate that Congress meant to preclude reliance on the broad provisions of an *Ex parte Young* suit to enforce the federal statutory standards governing state child adoption and welfare services. *Cf. Westside Mothers v. Haveman,* 133 F.Supp.2d 549, 574–75 (E.D.Mich.2001) (applying *Seminole Tribe* to preclude *Ex parte Young* action under federal Medicaid statute where statute authorized secretary of Heath and Human Services to withdraw federal funding from non-compliant states). We therefore hold that those portions of the injunction that are intended to enforce rights created by Title IV of the Social Security Act are not amenable to enforcement pursuant to the *Ex parte Young* doctrine, and thus we must reverse in part the district court's conclusion that this action is not barred by the Eleventh Amendment.

### B. *Younger Abstention*

Because our conclusion that there is no *Ex parte Young* cause of action for violations of Titles IV and XX of the Social Security Act (and therefore that such claims are barred under the Eleventh Amendment) applies only to a portion of the SEP, we still need to consider the district court's decision to abstain under *Younger* with regard to appellants' constitutional due process claims. Two preliminary matters must be considered. First, we need to consider Appellants' contention that the Department in the Original Consent Decree waived any right to raise the *Younger* abstention doctrine. Second, even if there is no waiver, Appellants argue that the Department has not demonstrated a significant change in fact or law since the SEP sufficient to justify the district court's modification of that decree.

*Champion Home Builders Co.,* 222 F.3d 788, 791–92 (10th Cir.2000). Since a preemption inquiry and a *Seminole Tribe-Ex parte Young* inquiry both involve questions of congression-

### 1. *Waiver*

■ Appellants' waiver argument is based on the following language in the Original Consent Decree: "Plaintiff and the Secretary of the New Mexico Human Service Department hereby settle the declaratory and injunctive claims of this action, and the court hereby ORDERS that the Plaintiffs and the Secretary and his successors are bound as follows...." The language of the Original Consent Decree, however, does not constitute the last word between the parties on the matter. Rather, the SEP contains the following provision: "If either party decides to return to court for determination of any issue after December 31, 1998, execution of this Exit Plan shall not be deemed a waiver or compromise of any obligation, defense or assertion of any legal right or remedy which either party may claim." Hence, the narrow question before us is whether the Department's seemingly unqualified submission of this issue to the district court in the Original Consent Decree trumps the parties' broad reservation of rights and defenses in the subsequent SEP.

■ We construe the terms of a consent decree de novo using traditional principles of contract interpretation. *See, e.g., Joseph A.,* 69 F.3d at 1085. Although we may assume without deciding that the language of the Original Consent Decree would be sufficient to constitute a waiver of the Department's right to seek abstention under *Younger, see, e.g., Morrow v. Winslow,* 94 F.3d 1386, 1390 (10th Cir. 1996) (a state may waive *Younger* jurisdiction by voluntarily submitting a controversy to the jurisdiction of a federal forum), the key issue in this case is the effect of

al intent, it seems logical that the same rule allowing consideration of regulations would apply.

the SEP language reserving the right to raise additional defenses. In approving the SEP, the district court did not merely modify the Original Consent Decree; it vacated the earlier decree in favor of the new one. "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1469 (10th Cir.1994) (citations and quotations omitted); *see also Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 662 (1st Cir.1997) ("Vacating a consent decree ... wipes the slate clean, not only rendering the decree sterile for future purposes, but also eviscerating any collateral effects and, indeed, casting a shadow on past actions taken under the decree's imprimatur."). Thus, the only agreement that is ultimately relevant to this issue is the SEP, which explicitly stated that the SEP "shall not be deemed a waiver or compromise of any ... defense or assertion of any legal right or remedy which either party may claim." In light of its clear reservation of defenses, we conclude the Department has not waived its right to argue in favor of *Younger* abstention.

### 2. *Standard of Review of the Younger Claim*

 Having found that the Department did not waive its right to argue *Younger* abstention, we must yet determine the standard of review we should utilize in analyzing the merits. In general, we review de novo a district court's application of the *Younger* abstention doctrine. Appellants, however, contend that the SEP constitutes a final judgment, and therefore that the Department must satisfy the rigorous standards for modification of a consent decree pursuant to Rule 60(b) of the Federal Rules of Civil Procedure as set forth in *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748,

116 L.Ed.2d 867 (1992). In *Rufo*, the Supreme Court held that a party seeking a modification of a consent decree under Rule 60(b), "bears the burden of establishing that a significant change in circumstances warrants revision of the decree.... A party seeking modification of a consent decree may meet its initial burden by showing either a significant change in factual conditions or in law." *Id.* at 383–84, 112 S.Ct. 748; *see also David C. v. Leavitt*, 242 F.3d 1206, 1211–12 (10th Cir. 2001). A district court's decision to modify a consent decree is reviewed for abuse of discretion. *See, e.g., id.* at 1210; *Cablevision of Texas III, L.P. v. Okla. W. Telephone Co.*, 993 F.2d 208, 210 (10th Cir. 1993).

In this case, however, the Department is not seeking to modify the decree itself. Rather, it is seeking resolution of an unlitigated defense which not only was not specifically addressed in the decree, but was explicitly removed from its coverage by the reservation of rights and defenses. Under such circumstances, *Rufo*'s requirement that a party to a consent decree make a threshold showing of changed circumstances prior to modification of the decree does not govern our analysis.

### 3. *Younger Analysis*

 We now turn to the merits of the Department's *Younger* abstention argument. "Under the *Younger* abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—' when a state forum provides an adequate avenue for relief." *Weitzel v. Div. of Occupational and Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir.1999)). We review de novo a district court's application

of the *Younger* abstention doctrine, *see Taylor v. Jaquez*, 126 F.3d 1294, 1296 (10th Cir.1997), recognizing that abstention "is the exception, not the rule." *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). "It should be 'rarely ... invoked, because the federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Roe # 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir.2001) (quoting *Ankenbrandt*, 504 U.S. at 705, 112 S.Ct. 2206).

*Younger* requires that a federal court refrain from hearing an action over which it has jurisdiction "when [the] federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) affords an adequate opportunity to raise the federal claims." *J.B. v. Valdez*, 186 F.3d at 1291. Once a court finds that the required conditions are present, abstention is mandatory. *See, e.g., Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999) ("*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances.").

Because we have already held that enforcement of the majority of the terms of the SEP is barred by the Eleventh Amendment and *Seminole Tribe*, we consider only whether the SEP provisions for assessment and treatment planning conferences for children entering the Department's custody and periodic review of those plans violate *Younger*. These provisions fall within the SEP's "Planning and Review" section, and require that the De-

partment conduct two conferences—one for assessment of the child and another to create a long-term plan of services for the child while in the Department's custody. In addition, the Department is required to review the long-term plan every six months to ensure it remains appropriate. The provisions set forth detailed requirements for the contents of each plan,[5] as well as a number of restrictions on the Department's planning flexibility. For example, unless the Children's Court so orders against the documented advice of the Department, the SEP precludes the Department from recommending emancipation for children who are twelve years old or younger, and requires that children aged twelve to fourteen receive counseling before a plan of emancipation can be established. Further, the SEP bars the Department from setting a permanency planning goal of long-term foster care unless no other goal is appropriate and a social worker consultant supervisor has approved the plan. The Department is also barred from maintaining a plan of "Return Home" for more than fifteen of the most recent twenty-two months that a child is in custody unless special circumstances exist or the Children's Court so orders against the documented recommendation of the Department. It is against this background that we conduct our *Younger* analysis.

Appellants do not contest the district court's finding that the case at bar implicates important state interests. Although the members of the plaintiff class are each individually engaged in ongoing proceedings before the family court, *see* N.M. Stat. § 32A–4–16 et seq. (creating jurisdiction in Children's Court to adjudicate status of

---

5. For example, assessment plans must include findings to identify the reason a child is in custody, make a safety assessment and plan for the child, establish a visitation plan if appropriate, identify a permanency planning goal, identify necessary services and steps to reach the permanency planning goal, and identify parties responsible for each plan item. Treatment plans must contain similar information and in addition include a description of steps and services necessary to facilitate family reunification or to achieve an alternative permanent plan.

allegedly abused and neglected children),[6] Appellants contend that their class suit is at most parallel to the state court proceedings. Further, Appellants argue that we should reverse the district court because the systemic relief sought in this case is not available in the New Mexico Children's Court.

■ A court should not abstain from exercising its jurisdiction based merely on the presence of parallel state and federal suits. *See, e.g., Green v. City of Tucson,* 255 F.3d 1086, 1097–99 (9th Cir.2001). Moreover, we recognize that this is not the typical *Younger* case in which a federal court is asked either to enjoin an action from proceeding in state court, *cf., e.g., Younger,* 401 U.S. at 38–39, 91 S.Ct. 746 (considering suit to enjoin Los Angeles district attorney from enforcing state law alleged to be unconstitutional), or to issue a declaratory judgment that would have essentially the same effect as an injunction, *cf., e.g., O'Hair v. White,* 675 F.2d 680, 695 (5th Cir.1982). Enforcement of the SEP, however, requires interference with the operations of the Children's Court in an insidious way in that the SEP expressly prevents the Department's employees from recommending a range of planning options for children who are in the Department's custody. This limitation has an effect not unlike that of an injunction or declaratory judgment because the Department is precluded ever from presenting certain options to the Children's Court. Therefore, the state court is, for all practical purposes, precluded from considering these options. Courts, albeit in different contexts, have frequently observed that independent, vigorous advocacy is essential to the operation of our adversary system and as such essential to the rule of law. *See, e.g., Legal Servs. Corp. v. Velazquez,* 531 U.S. 533, 121 S.Ct. 1043, 1050–51, 149 L.Ed.2d 63 (2001) ("An informed, independent judiciary presumes an informed, independent bar. . . . By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power."); *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) ("The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is " 'best discovered by powerful statements on both sides of the question.' " " (citations omitted)); *Walters v. Nat'l Assoc. of Radiation Survivors,* 473 U.S. 305, 371, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting) ("[T]he citizen's right of access to the independent, private bar is itself an aspect of liberty that is of critical importance in our democracy.");[7] *In re McConnell,* 370 U.S. 230,

6. Specifically, when a child has been taken into the Department's custody, New Mexico state law requires the Children's Court to conduct: (1) a preliminary hearing to determine whether probable cause exists to justify additional custody and proceedings, *see* § 32A–4–18; (2) an adjudicatory hearing, *see* § 32A–4–19; (3) a dispositional hearing which results in extensive factual findings and a determination of the level of state services necessary for the child, *see* § 32A–4–22; (4) periodic reviews of the child's welfare following the dispositional hearing, *see* § 32A–4–25; and (5) a permanency hearing to determine when and if the child should be returned to his or her parents, *see* § 32A–4–25.1.

7. Indeed, Justice Stevens notes that William Shakespeare's oft-quoted line, "The first thing we do, let's kill all the lawyers," was not an invective against the legal profession, but rather was spoken by a rebel who "realized that disposing of lawyers is a step in the direction of a totalitarian form of government." *See Walters,* 473 U.S. at 371 n. 24, 105 S.Ct. 3180 (Stevens, J., dissenting and quoting William Shakespeare, *King Henry VI,* pt. II, Act IV, scene 2, line 72).

236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) ("An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice."); *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) ("The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns."). A federal court's enforcement of a decree that bars an attorney from acting as an independent advocate for an outcome he or she believes is appropriate similarly interferes with the operations of a state court. The SEP therefore implicates that prong of *Younger* which counsels for abstention when the federal jurisdiction would interfere with an ongoing state proceeding.

■ Finally, we must consider whether the state proceedings offer adequate opportunities for Appellants to raise their federal procedural due process claims. In opposing abstention on the grounds that the federal remedy requested is not available in state court, "[p]laintiffs bear the burden of proving that state procedural law barred presentation of their claims in the New Mexico Children's Court." *J.B. v. Valdez*, 186 F.3d at 1292. As an initial matter, it is clear that the Children's Court has the power to consider federal claims, including claims of procedural due process violations. *See State ex rel. Children, Youth & Families Dep't v. Ruth Anne E. (In re Ruth Anne E.)*, 126 N.M. 670, 974 P.2d 164, 171 (1999) (reversing Children's Court for failing to grant continuance on procedural due process grounds to allow

incarcerated parent to attend hearing to terminate parental rights); *T.B. v. State (In re T.B.)*, 121 N.M. 465, 913 P.2d 272, 276 (1996) (affirming Children's Court's rejection of a motion for attorneys fees under 42 U.S.C. § 1988 in light of the Children's Court's dismissal of a due process claim brought under 42 U.S.C. § 1983).

Appellants contend, however, that it is not enough that they may be able to raise their federal claims in the context of their individual proceedings before the Children's Court. Rather, they argue that abstention is inappropriate because the Children's Court Rules of Civil Procedure make no provision for class actions, and therefore the Children's Court will never be presented with a set of facts that would enable it to grant the systemic injunctive relief they sought against the Department in the present action.

We assume without deciding that the Children's Court is not authorized to hear class actions and other representative suits.[8] However, we could find no case, and Appellants cite none, that hold that a party is entitled to avoid the effects of the *Younger* abstention doctrine in cases where relief is available to individual litigants in ongoing state proceedings but not to represented parties in a class action. *See J.B. v. Valdez*, 186 F.3d at 1292 (abstaining in light of court's conclusion that "plaintiffs fail to clearly show that the Children's Court could not have adjudicated these federal claims during the periodic

---

**8.** Appellants cite *In re T.B.*, 913 P.2d at 274, to show the Children's Court Rules of Civil Procedure preclude the Children's Court from considering cases seeking systemic relief against the Department. Although Appellants are correct that the Children's Court dismissed a motion brought under § 1983 to require the Department "to submit an action plan for a system for the proper licensure and regulation of therapeutic foster care" as "not

well taken," *In re T.B.* does not hold that such systemic relief is never available from the Children's Court. The New Mexico Court of Appeals addressed the propriety of the dismissal only in dicta, noting that the Guardian ad Litem who brought the motion "did not identify by citation what federal laws or constitutional provisions secure the rights he was seeking to enforce" under § 1983. *Id.* at 275.

review process"). Moreover, we note that Appellants have not attempted to raise their procedural due process claims in their individual proceedings. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume the state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Here, the Appellants have failed unambiguously to show that the relief they seek, including structural relief, would not effectively be available through the Children's Court.

Hence, we conclude that the prerequisites for *Younger* abstention are satisfied with respect to Appellants' procedural due process claims, and accordingly that these claims should be dismissed.

## III. CONCLUSION

Although we reverse the district court's order that Eleventh Amendment immunity does not apply to Appellants' social security claims, we affirm the district court order that *Younger* abstention bars Appellants' constitutional claims. Thus, both on the basis of Eleventh Amendment and *Younger* abstention, we AFFIRM the district court's dismissal of this case.